**Michael D. SARSYCKI, Plaintiff,**

v.

**UNITED PARCEL SERVICE, Defendant.**

**No. CIV–93–1828–C.**

United States District Court,
W.D. Oklahoma.

Aug. 31, 1994.

Edward L. Ray, Joseph W. Strealy, Schnetzler & Strealy, Oklahoma City, OK, for plaintiff.

Peter T. Van Dyke, Samuel R. Fulkerson, Lytle Soule & Curlee, Oklahoma City, OK, for defendant.

## MEMORANDUM OPINION AND ORDER

CAUTHRON, District Judge.

Plaintiff, Sarsycki, brings this action alleging discrimination on the basis of physical disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. and the Oklahoma Anti–Discrimination Act, 25 O.S. § 1901 (1990). Plaintiff also asserts a state law claim in public policy tort based on the same allegations.

Defendant, United Parcel Service ("UPS"), initially filed a motion to dismiss plaintiff's public policy tort claim. While this motion was pending defendant filed a motion for summary judgment as to all claims. Subsequently, the parties filed a joint application to strike the case from the Court's June trial docket based on their belief that all material facts could be stipulated to and judgment entered on the briefs. The motion to strike was granted and the Court issued an order May 31, 1994, requiring the parties to submit a joint stipulation of facts. On June 29, 1994, the parties filed a joint stipulation of facts and expected testimony. The Court hereby adopts and incorporates the facts and testimony stated therein and will issue findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52. Defendant's motion for summary judgment and motion to dismiss are thus rendered moot.

The following facts are not in dispute. Sarsycki was employed by UPS as a full-time package car driver in March, 1982. As a package car driver, Sarsycki was assigned to a route normally serviced by vehicles weighing 10,000 pounds or less.

On or about June 18, 1991, Sarsycki was diagnosed with insulin-dependent diabetes. UPS has a policy that prohibits insulin-dependent diabetics from operating motor vehicles on public highways. Because of Sarsycki's insulin-dependent diabetic condition, UPS did not permit him to maintain his package car driver position. Rather, in July, 1991, UPS transferred Sarsycki to a part-time car washer job.

In March, 1992, Sarsycki filed a claim with the Oklahoma Human Rights Commission alleging a violation of the Oklahoma Anti-Discrimination statute. Additionally, Sarsycki filed two grievances through his union protesting (1) UPS' refusal to allow him to work as a package car driver and (2) UPS' refusal to combine part-time jobs to allow Sarsycki to work approximately the same number of hours as before his diagnosis.

On or about June 21, 1993, Sarsycki was assigned a second part-time non-driving job, enabling him to work in excess of forty hours per week. As a union member, a collective bargaining agreement ("CBA") between the union and UPS governs certain aspects of Sarsycki's employment. In connection with his second assignment, Sarsycki, union representatives and UPS signed a written agreement stating Sarsycki accepted the two part-time non-driving jobs as a "reasonable accommodation" of his employment situation. Sarsycki executed the agreement after consulting an attorney. He understood the agreement constituted a settlement of his union grievances. In a related document, Sarsycki proposed certain changes to the agreement, expressing his belief that the two part-time jobs did not constitute a reasonable accommodation, but that he would accept the offer if no other options were provided. Sarsycki accepted the second part-time job while continuing to maintain he is qualified to work as a package car driver. Sarsycki is currently employed with UPS, holding two part-time positions.

## DISCUSSION

UPS seeks judgment on alternative theories. First, UPS argues Sarsycki's state law claims are pre-empted by federal law. Second, UPS argues Sarsycki has failed to state a claim under Oklahoma's public policy tort. Third, UPS argues Sarsycki has not established a case of intentional disability discrimination under the ADA. Lastly, UPS argues Sarsycki is estopped from asserting a claim under the ADA because such claim has been waived by previous agreement.

### 1. Pre–Emption

■ In its first proposition, UPS argues Sarsycki's state law claims are pre-empted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 et seq. and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 et seq. Federal law provides that employees have the right to engage in concerted activities for the purpose of collective bargaining. 29 U.S.C. § 157. Unfair labor practices are defined in 29 U.S.C. § 158 and include an employer's interference, restraint, or coercion of employees in the exercise of the rights recognized in § 157. The Court finds Sarsycki's claims are based on interference with rights grounded in his CBA and are thus "concerted activi-

ties" covered by § 157 of the NLRA. *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). See also *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985), and the discussion therein of *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), concluding "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 [of the LMRA] and be resolved by reference to federal law." *Lueck*, 471 U.S. at 210, 105 S.Ct. at 1911.

Having found Sarsycki's claims are concerted activities, this Court follows the conclusion reached in *Lueck* that "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract, that claim must either be treated as a § 301 claim, ... [citations omitted] or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1916. See also *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). Accordingly, the Court finds Plaintiff's state law claims are preempted by federal law.

**2. Public Policy Tort**

■ Moreover, even supposing Sarsycki's state claims are not preempted, UPS argues its alleged discriminatory conduct does not state a cause of action under Oklahoma's public policy tort as enunciated in *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989). In *Burk* the Oklahoma Supreme Court adopted a narrow public policy exception to the at-will termination rule for claims of wrongful discharge. Recently, in *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 248–49 (10th Cir. 1993), the Tenth Circuit refused to expand the holding of *Burk* to encompass wrongful failure to hire claims. In that case, the plaintiff relied on the broad language in *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218 (Okla.1992) admonishing employment discrimination to support its argument for expansion of *Burk*. This argument was rejected by the court stating, "the Oklahoma Supreme Court has been very precise in carving out narrow exceptions to the employment-at-will doctrine, and we are unwilling to unnecessarily expand those exceptions." *Sanchez*, 992 F.2d at 248. Plaintiff here relies on the identical argument rejected in *Sanchez* to support its claim. For the reasons stated in *Sanchez*, this Court will not expand the holding of *Burk* to include a cause of action for wrongful discrimination under Oklahoma's public policy tort.

**3. Disability Discrimination**

The ADA states, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (West 1994 Supp.). Sarsycki argues UPS' refusal to allow him to maintain his package car driver position after being diagnosed with diabetes is violative of the ADA. UPS contends Sarsycki is not entitled to relief under the ADA because Sarsycki (1) does not have a disability as defined by the ADA, (2) is not "otherwise qualified" as a package car driver, and (3) has failed to show UPS intentionally discriminated against him.

**"Disability"**

■ The term "disability" is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (West 1994 Supp.). These statutory definitions have been further clarified by regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"). Under these regulations the term "substantially limits" means, "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform

that same major life activity." 29 C.F.R. § 1630.2(j)(ii) (1993). In determining whether an individual is substantially limited in a major life activity, the following factors should be considered (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected long term impact of or resulting from the impairment. *Id.* at § 1630.2(j)(2). "The existence of an impairment is to be determined without regard to mitigating measures such as medicines ..." 29 C.F.R. app. § 1630.2(h) (1993).

Here, the parties do not dispute that without medication Sarsycki would be unable to perform major life activities. The expected medical testimony of UPS' medical expert is that lack of insulin for a diabetic creates loss of judgment, confusion, and blackouts. Similarly, the testimony of Sarsycki's medical expert would be that without insulin Sarsycki would get sick, have multiple symptoms, and eventually lapse into a coma and die. Further, the undisputed facts indicate Sarsycki will have this condition for the duration of his life. The Court finds this testimony sufficient to establish that Sarsycki has a disability as defined under the first prong of the statutory definition.

"Otherwise Qualified"

■ Under the ADA, a "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (West Supp. 1994). Sarsycki concedes that since being diagnosed with diabetes he no longer meets UPS qualification standards for drivers. Sarsycki argues, however, he can safely perform all essential functions of his job, except for UPS guidelines prohibiting him from doing so. As a reasonable accommodation, Sarsycki seeks a waiver of UPS policy which would allow him to operate vehicles weighing 10,000 pounds or less under the same criteria as set forth by the Oklahoma waiver for commercial motor vehicles, i.e., that he may drive as long as food is within reach but may carry neither passengers nor hazardous materials.

UPS contends that driving in compliance with UPS regulations is an essential function of any driving job with UPS and cannot be altered by reasonable accommodation. UPS maintains its policy is required by DOT regulations 49 C.F.R. § 391.41(b)(3) and § 390.5 (1993). Alternatively, to the extent UPS policy exceeds DOT standards, UPS argues its policy is justifiable based on the same safety concerns that undergird DOT policy.

In looking at the specific sections of the DOT regulations cited by defendant within the context of the DOT regulations as a whole, the Court finds that 49 C.F.R. § 391.41(b)(3), which bars insulin-dependent diabetics from driving motor vehicles, applies only to vehicles weighing over 10,000 pounds. Both 49 C.F.R. § 391.41 and § 390.5 are part of the Federal Motor Carrier Safety Regulations ("FMCSRs"). Pursuant to its authority under these regulations, the Federal Highway Administration ("FHWA") in 1988 made a proposal to exempt from regulation under the FMCSRs those vehicles not meeting the definition of "commercial motor vehicle" contained in § 390.5.[1] 53 Fed.Reg. 18,044 (1988). After receiving comments from various businesses impacted by the proposed change, including UPS who opposed the change, the FHWA decided federal regulation of vehicles weighing 10,000 pounds or less was not warranted. *Id.* Thus, the DOT regulations as a whole, of which § 391.41 and § 390.5 are a part, do not apply to vehicles under 10,000 pounds.

This interpretation of the scope of the regulations is consistent with FHWA's own statements. When recently considering altering its regulations to establish a waiver program for insulin-dependent drivers, the FHWA stated, "[t]his rule [49 C.F.R. § 391.41(b)(3) ] provides that a person is physically qualified to drive a CMV [commercial motor vehicle] if the person 'has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin con-

---

**1.** This section defines commercial motor vehicle as a vehicle (1) having a gross vehicular weight of more than 10,000 pounds or (2) designed to transport 16 or more passengers, or (3) used to transport hazardous materials.

trol.'" 58 Fed.Reg. 40,690 (1993) (quoting 49 C.F.R. § 391.41(b)(3)).

Thus, to the extent UPS policy applies to vehicles weighing 10,000 pounds or less, it is not required by federal law, and UPS must establish its policy is justifiable based on safety concerns. To invoke safety concerns as a basis for a restrictive employment practice under the ADA, an employer must show that the individual with a disability poses "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C.A. § 12113(b) (West Supp.1994). Direct threat is defined as "a significant risk to the health and safety of others that cannot be eliminated by reasonable accommodation" Id. at § 12111(3). In determining whether an individual poses a direct threat to the health or safety of others a company must make an individualized assessment of (1) the nature, duration and severity of risk; (2) the probability that potential injury will actually occur; and (3) whether reasonable modifications of policies will mitigate the risk. 28 C.F.R. § 36.208(c) (1993).

"An individualized assessment is absolutely necessary if persons with disabilities are to be protected from unfair and inaccurate stereotypes and prejudices." Bombrys v. City of Toledo, 849 F.Supp. 1210, 1219 (N.D.Ohio 1993). In Anderson v. Little League Baseball, Inc., 794 F.Supp. 342, 345 (D.Ariz.1992) the court held that a blanket policy which prohibited baseball coaches in wheelchairs from being on the field, regardless of the coach's disability or field or game condition, violated the ADA. The court further held that in order to satisfy the requirements of the ADA and its implementing regulations, the league was required to make an individualized assessment of the nature, duration, and severity of risk posed by each coach in a wheelchair. Id. See also Bombrys, 849 F.Supp. at 1219 (1993) (Blanket disqualification of individuals with insulin-dependent diabetes as candidates for police officer violates ADA).

There is no indication in the pleadings or proposed testimony of UPS that UPS conducted an individualized assessment of Sarsycki's abilities and determined that Sarsycki poses a direct threat to the health and safety of others. Rather, UPS seems to rely solely on the holding in Chandler v. City of Dallas, 2 F.3d 1385, 1395 (5th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994), which states that as a matter of law, insulin-dependant diabetics are not otherwise qualified to operate motor vehicles, to justify its position.[2]

In Chandler, the court stated,

... the provisions relating to insulin dependent diabetes and impaired vision, have been in effect since 1970. Since that time, the Federal Highway Administration has had numerous opportunities to revisit these regulations, and to update them, if need be. Yet, the physical requirements regarding insulin dependent diabetes and impaired vision have remained unchanged. The statement of the Administrator of the Federal Highway Administration in the preamble to the proposed regulations remains valid to this day: 'accident experience in recent years has demonstrated that reduction of the effects of organic and physical disorders, emotional impairments, and other limitations of the good health of drivers are increasingly important factors in accident prevention.'

Id. at 1394 (quoting 34 Fed.Reg. 9,081 (1969)). However, the Chandler holding has been undermined by the fact that the FHWA has recently instituted a waiver program for insulin-dependent drivers of commercial motor vehicles which the FHWA believes is "consistent with the safe operation" of those vehicles. 58 Fed.Reg. 40,693 (1993). This change in policy was partly the result of an ADA mandate requiring the FHWA to conduct a review of its regulations "in order to ascertain whether the standards conform with current knowledge about the capabilities of persons with disabilities." Id.

UPS admits Sarsycki's diabetes is currently under control and that Sarsycki has not experienced a hypoglycemic episode since being diagnosed with diabetes in 1991. Sar-

---

**2.** The Court notes that Chandler was decided under the Rehabilitation Act ("RHA"), 29 U.S.C. §§ 701 et seq.. However, because the language and legal principles of the ADA are modeled on the RHA, past interpretations of the RHA are persuasive authority for ADA interpretations.

sycki has also presented to UPS letters from examining physicians indicating his ability to safely maintain his driving position. Based on the medical testimony presented by both parties, the Court finds Sarsycki is "otherwise qualified" to drive motor vehicles weighing 10,000 pounds or less as long the vehicle is not designed to transport either passengers or hazardous materials. Because Sarsycki's route as a package car driver was serviced almost exclusively by vehicles under 10,000 pounds, the Court finds Sarsycki is entitled to be returned to his previously held package car driver position with the reasonable accommodation that food be within reach and he carry neither passengers nor hazardous materials.

*"Solely on the Basis of Disability"*

■ Finally, UPS contends Sarsycki has failed to present direct evidence of intentional discrimination. However, otherwise qualified handicapped individuals claiming discrimination need not establish an intent to discriminate. *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1384 (3rd Cir.1991) (citing *Alexander v. Choate*, 469 U.S. 287, 295–96, 105 S.Ct. 712, 717–18, 83 L.Ed.2d 661 (1985)). UPS has stipulated that it refused to allow Sarsycki to return to his package car driver position because of its policy which forbids all insulin-dependent diabetics from driving positions. Such a showing is sufficient to satisfy the burden of proof required by the ADA.

**4. Waiver**

The Court finds that in light of the language of the settlement agreement and Sarsycki's concurrent letter, it is clear no agreement was reached as to whether Sarsycki's diabetes was a disability or mandated his reassignment from driving duties. Thus, the Court finds that in signing the agreement Sarsycki did not waive his right to sue under the ADA.

**5. Damages**

A hearing will be held regarding the issue of damages under the ADA. The parties are ordered to appear before the Court for a status conference to be scheduled at a later date.

### CONCLUSION

Accordingly, judgment will be entered in favor of plaintiff on the ADA claim and judgment will be entered in favor of defendant on the claim of discrimination under 25 O.S. § 1901 and under Oklahoma's public policy tort. A judgment shall enter once appropriate relief has been determined.

IT IS SO ORDERED.