**Curtis B. BARVICK, Plaintiff,**

**v.**

**Henry CISNEROS, Secretary of the Department of Housing and Urban Development of the United States, Defendant.**

**No. 95-2326-JWL.**

United States District Court,
D. Kansas.

Sept. 4, 1996.

Andrew C. Marquardt, Marquardt & Associates, L.L.C., Fairway, KS, for plaintiff.

Nancy M. Landis, Office of United States Attorney, Kansas City, KS, for defendant.

## *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

### *I. Introduction.*

This employment discrimination case comes before the court on the defendant's motion for summary judgment (Doc. # 57) pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, the court grants in part and denies in part the defendant's summary judgment motion.[1] Plaintiff may proceed to trial on his gender and age claims but he has failed to sustain his summary judgment burden on the equal pay claim.

### *II. Facts.*

The following facts are either uncontroverted or, if controverted, construed for the purposes of resolving this motion in the light most favorable to the plaintiff. In October of 1984, the plaintiff was hired by the Office of Inspector General ("OIG"), Department of Housing and Urban Development ("HUD") as a GS–11 criminal investigator [2] in its Kansas City, Missouri office. Mr. Ty Rauber, the Regional Inspector General for Investigation ("RIGI") for the Kansas City office at the time, initially supervised the plaintiff. In 1986, the plaintiff was promoted to a GS–12 criminal investigator pursuant to Mr. Rauber's recommendation. As the plaintiff's su-

1. The plaintiff has filed an objection to certain evidence contained in the defendant's reply (Doc. # 64). The defendant has filed a motion seeking leave to respond to the plaintiff's motion (Doc. # 65). Because the court believes that the evidence contested in those motions is not dispositive on any of the issues raised in the defendant's summary judgment motion and because the court concludes in this decision that the claims to which the contested evidence relates survive summary judgment, the court denies both motions as moot.

2. As a criminal investigator, the plaintiff's job was to investigate instances of fraud, waste, and abuse in HUD programs.

pervisor, Mr. Rauber discussed the plaintiff's writing with him and, on a few occasions, indicated that the plaintiff attached too many exhibits and that the plaintiff's reports were too long. Overall, Mr. Rauber characterized the plaintiff as clear and concise, considered his thoroughness helpful to investigations, and thought of the plaintiff as an excellent employee.

Following Mr. Rauber's retirement in 1986, Mr. Al Bahr became the RIGI for the Kansas City office and, as a result, the plaintiff's supervisor. The plaintiff's relationship with Mr. Bahr began to deteriorate after an incident in 1989 when the plaintiff told Mr. Bahr he would "give it the old college try" in response to Mr. Bahr's criticism of his work. The plaintiff believes that Mr. Bahr was offended by his remark because, unbeknownst to the plaintiff, Mr. Bahr did not have a college degree. As a result of this "blow up" in their relationship, Mr. Bahr became critical of all areas of the plaintiff's work.

On February 4, 1994, Vice–President Al Gore, HUD Secretary Henry Cisneros, and Attorney General Janet Reno announced a special initiative called Operation Safe Home ("OSH"), which is designed to secure the safety of the tenants living in public housing units in various cities throughout the country. OSH required that HUD/OIG become actively involved in joint task forces with the Federal Bureau of Investigation as well as other law enforcement agencies. The goal of these tasks forces is to rid public and assisted housing of firearms, gangs, and drugs.

In March of 1994, Ms. Brown became the RIGI [3] in the Kansas City office replacing Mr. Bahr who had retired about ten months earlier. Thus, Ms. Brown's job included the implementation of OSH in her region. In order to participate in the OSH task forces, the HUD/OIG criminal investigator needed to have training and experience with violent crimes. As a result, Ms. Brown advised the plaintiff that he had to attend the United States Department of Treasury's Federal Law Enforcement Training for the Criminal Investigator's School ("FLETC") so he could be certified to engage in law enforcement activities involving violent crimes and so he could be deputized, which authorized him to execute search warrants, carry a weapon, make an arrest, or engage in any other law enforcement activity restricted to deputized officers. The plaintiff responded that he would rather quit than go to FLETC training. A few days latter, the plaintiff changed his mind and agreed to attend FLETC training. In August of 1994, the plaintiff indicated that he wanted to attend the FLETC training in January of 1995. The plaintiff never attended the FLETC training course.

On October 3, 1994, six Notices for Position Vacancy were issued by HUD/OIG for GS–13 Criminal Investigator positions in eight different cities including Kansas City. The duties of the GS–13 criminal investigator positions included participating in and supporting efforts under OSH, which included activities directed against violent crime. The plaintiff, Ms. Karen Gleich and several others applied for the GS–13 criminal investigator position in the Kansas City office. Ms. Yvonne Rorie, a personnel specialist with HUD's human resources office, did an initial screening and placed the names of all qualified applicants on one rating worksheet. Ms. Rorie and two other individuals reviewed and scored all of the applicants. Any applicant with ten or more points was placed on a "Best Qualified List." Both Ms. Gleich, who received sixteen points, the plaintiff, who received thirteen points, and ten other applicants were placed on a selection roster which was sent to Ms. Brown, who was in charge of filling the GS–13 position in the Kansas City office. Ms. Brown believed that, because there was an impending hiring freeze, she had to make her selection quickly.

Due to the time crunch, Ms. Brown chose not to formally interview any of the candidates, which was permissible under HUD's personnel guidelines. Rather, she spent approximately twenty hours between November 29, 1994, and December 3, 1994, reviewing the applications for the four open positions she had to fill, which included the

3. *Subsequent to Ms. Brown's promotion to RIGI, the title was changed to special agent in charge.* For clarity purposes, the court will continue to refer to the title as RIGI.

GS–13 position in the Kansas City office.[4] With respect to the GS–13 position, Ms. Brown was looking for the following qualifications: violent crime experience, white collar crime experience, experience with similar HUD or other government programs, education level, training, awards, and supervisor's evaluation of their performance. Moreover, Ms. Brown also had to consider the goals of HUD/OIG's Affirmative Employment Program for Minorities and Women ("The AE Program"), which is designed to increase the number of women and minorities employed by HUD/OIG, because she was responsible for implementing and enforcing The AE Program in her area. Based on these categories and the goals of The AE Program, Ms. Brown placed all the applications in a pile with the best overall qualified applicant on top. Ms. Brown alleges that she placed the plaintiff's application on the bottom of her pile based on her knowledge of his abilities[5] and because it contained approximately 100 errors.[6]

After sorting the applicants by the above mentioned qualifications, Ms. Brown eliminated all of the applicants who did not have any violent crime/tactical experience because she believes that violent crime/tactical experience was necessary to fulfill the OSH mission. Although, she did tell the plaintiff that Ms. Gleich and he were the two finalists for the GS–13 position, Ms. Brown alleges that the plaintiff did not make this cut because he did not have any violent crime experience. Ms. Brown stated that the top seven applicants for the GS–13 position in Kansas City were (1) Mr. Brad Geary, (2) Mr. Lester Davis, (3) Mr. Paul Broxterman, (4) Ms. Gleich[7], (5) Mr. Bryon Potter, (6) Mr. Dan Ronski, and (7) Mr. Kevin Evans. Mr. Geary was offered and accepted a GS–13 position in St. Louis. Mr. Davis was offered and accepted a GS–13 position in Coral Gables, Florida. Mr. Broxterman was offered and accepted a GS–13 position in Oklahoma City. As a result, in early December of 1994, Ms. Brown promoted Ms. Gleich, who was twenty nine years of age at the time, to the GS–13 position in Kansas City because she was, in Ms. Brown's mind, the most qualified of the remaining candidates.[8]

On January 26, 1995, the plaintiff, a forty seven year old male, filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age and sex discrimination and a violation of the Equal Pay Act ("EPA"). On April 14, 1995, the plaintiff filed an amended administrative complaint alleging retaliation and violation of the Rehabilitation Act. On July 26, 1995, the plaintiff filed this action alleging all the claims alleged in his EEOC complaint.

4. During her review, Ms. Brown took notes on each application. She listed at the top of her notes each candidates' age and sex. She also indicated whether the applicant had any special ethnic associations.

5. At this time, Ms. Brown had only reviewed one of the plaintiff's reports. Based solely on this one review, Ms. Brown allegedly became aware of the plaintiff's inability to consistently make clear and persuasive written presentations. Specifically, her criticisms included lengthy and sometimes not logically thought out sentence structure, numerous spelling errors, and failure to proofread. Ms. Brown also allegedly observed that the plaintiff conducted his cases as though he, and not the prosecuting attorney, was in charge of the prosecution and that the plaintiff was often inflexible and not a good listener. However, Ms. Brown testified that the plaintiff's writing was improving and rated his interview write ups, which are 90% of the investigator's writing responsibility, successful or highly successful.

6. The plaintiff's application contained 77 misspellings and typographical errors as well as numerous inaccuracies and incomplete information.

7. Ms. Gleich had no violent crime experience until after the vacancy announcements were distributed in October of 1994. Ms. Gleich's application also contained numerous spelling and grammatical errors.

8. In addition to Ms. Gleich's professionalism, dedication to the job, and quality of her work, Ms. Brown justified promoting Ms. Gleich for the following reasons. First, Ms. Gleich had received a Special Achievement Award from Headquarters OIG Audit and Investigation Awards Committee regarding her work on a complex multi-family equity skimming case. Second, Ms. Gleich consistently was rated Outstanding or Highly Successful in every performance element of her Performance Appraisals since becoming a special agent. Third, Ms. Gleich attended and graduated from FLETC and became involved in violent crime investigations in mid-October of 1994.

On March 21, 1995, the court granted the defendant's partial motion to dismiss, which limited the plaintiff's sex and age discrimination claims to the plaintiff's non-promotion to the Kansas City GS-13 position. The plaintiff subsequently voluntarily dismissed his retaliation and Rehabilitation Act claims. As a result, the plaintiff's remaining causes of action are (1) he was discriminated against based on his sex in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, when Ms. Brown failed to promote him in December of 1994; (2) he was discriminated against based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 19 U.S.C. § 621 *et seq.*, when Ms. Brown failed to promote him in December of 1994; and (3) he did not receive equal pay for equal work, in violation of the EPA, 29 U.S.C. § 206(d)(1).

### *III. Summary judgment standard.*

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton,* 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### *IV. Discussion.*

#### *A. Discrimination standard.*

Absent direct evidence of discrimination, the court analyzes disparate treatment cases according to the shifting burden of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Burrus v. United Telephone Co.,* 683 F.2d 339, 341–42, 343 (10th Cir.1982), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). Because the framework for assessing the evidence in age discrimination cases parallels that applicable in a Title VII case, the court uses the *McDonnell Douglas* burden shifting standard on both the plaintiff's age and sex discrimination claims. *Thomas v. Int'l Business Machines,* 48 F.3d 478, 484 (10th Cir. 1995). Under this standard, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. A prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the employee. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

To establish a prima facie case of gender discrimination based on a failure to promote theory, the plaintiff must show that he (1) is a member of a protected class, (2) was qualified for the promotion, (3) was not promoted, and (4) that the position was filled with someone outside the protected class. *See Comer v. Brown,* No. 93–1047, 1993 WL 538917 *1 (10th Cir. Dec. 29, 1993). When a plaintiff who is a member of a favored group (such as males) alleges disparate treatment, the courts have adjusted the prima facie case to reflect this specific context by requiring a showing of background circumstances which support the suspicion that the defendant is that unusual employer who discriminates against the majority. *Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 248 (10th Cir. 1993). To establish a prima facie case of age discrimination based on a failure to promote

theory, the plaintiff must show that he was (1) within the protected age group at the time of the failure to promote, (2) qualified for promotion, (3) not promoted, and (4) was passed over for an available promotion in favor of someone younger. *Furr v. AT & T Tech., Inc.*, 824 F.2d 1537, 1542 (10th Cir.), *reh'g denied*, 842 F.2d 253 (10th Cir.1988).

The burden of establishing a prima facie case of disparate treatment is not an onerous one. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Nevertheless, the plaintiff must, at a minimum, produce evidence that raises a reasonable inference that each element exists. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir.1994). Although all doubts must be resolved in the plaintiff's favor, allegations alone will not defeat summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, non-discriminatory reason for the decision. *Hicks*, 509 U.S. at 506–08, 113 S.Ct. at 2747. The ultimate burden of persuasion remains with the plaintiff to show that unlawful discrimination was the true reason for the adverse action. *Id.* at 506–10, 113 S.Ct. at 2747–48. If the defendant articulates a legitimate, non-discriminatory reason the presumption of discrimination established by the prima facie showing "drops out of the picture." *Id.* at 511, 113 S.Ct. at 2749.

If the defendant proffers a valid reason for the challenged conduct, the plaintiff must offer evidence that the defendant's proffered reasons were really a pretext for illegal conduct. *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir.1995). "At the summary judgment stage, if the plaintiff produces both a prima facie case and evidence supporting a finding that 'defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder.'" *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir.1994)); *see Durham v. Xerox Corp.*, 18 F.3d 836, 839–40 (10th Cir.1994) ("Although a prima facie case combined with disproof of the employer's explanations does not prove intentional discrimination as a matter of law, it may permit the factfinder to infer discrimination, and thus preclude summary judgment for the employer."). The plaintiff's mere conjecture that his or her employer's explanation is a pretext for discrimination is not sufficient to meet the plaintiff's evidentiary burden. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988). Failure by the plaintiff to come forward with evidence of pretext, however, will entitle the defendant to judgment. *Cone*, 14 F.3d at 529 (10th Cir.1994); *see Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993) ("If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate.").

***B. Analysis.***

***1. Gender Discrimination.***

Based on the evidence presented, the court concludes that the plaintiff has stated a prima facie case of gender discrimination. The defendant's main argument is that the plaintiff has failed to produce any evidence suggesting that HUD is one of those unusual employers who discriminates against the majority. The court disagrees. Shortly before her promotion decision at issue here, Ms. Brown made a comment concerning her belief that females make better investigators than males, which the court believes adequately supports the inference that Ms. Brown, as a representative of the defendant, is that unusual employer who discriminates against the majority. *See Sanchez*, 992 F.2d at 248. This is not a mere stray remark evidencing a generalized negative view toward a particular gender but, rather, bears a direct nexus to the specific kind of job in question and the basis on which plaintiff claims he was denied it.

The defendant also argues that even if the plaintiff could state a prima facie case, Ms. Brown had several legitimate non-discriminatory reasons justifying why she promoted Ms. Gleich instead of the plaintiff. First, the plaintiff's application contained more than 100 errors. The plaintiff points out, however, that Ms. Gleich's application had

numerous errors as well. Second, Ms. Brown perceived that the plaintiff was unable to consistently make clear and persuasive written presentations, that he was often inflexible and not a good listener, and that he conducted his cases as though he, not the prosecuting attorney, was in charge while, in contrast, Ms. Gleich worked well with the prosecutors and had an ability to make clear and persuasive oral and written presentations. The plaintiff, in turn, points out that Ms. Rorie placed his application on the best qualified list, that Ms. Brown previously evaluated his work as fully satisfactory or better, that his former supervisor described his writing as clear and concise, and that Ms. Brown made her conclusions after only reviewing one of the plaintiff's final reports. Third, Ms. Gleich attended FLETC, received commendations and an award for her work, and was consistently rated outstanding or highly successful in every performance element of her performance appraisals since becoming a special agent. In response, the plaintiff points out that FLETC was not a requirement for the GS–13 position, that he received commendations (including one for violent crime work) while employed at the ICC, and that Ms. Brown and his previous supervisors rated his work as fully satisfactory or better. As further evidence of pretext, the plaintiff points to the following evidence: the plaintiff had more violent crime investigatory experience than Ms. Gleich; violent crime experience was not listed on the selective placement or quality ranking factors on any of the vacancy announcements; and Ms. Brown offered the GS–13 position to Ms. Gleich and not to other more qualified men like Mr. Geary[9] who was ahead of Ms. Gleich on her top seven list.[10]

Construing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff has produced sufficient evidence to rebut, for purposes of summary judgment, the defendant's purported legitimate non-discriminatory reasons for the promotion decision in question. As a result, because the facts relating to the pretextuality of the defendant's action remain in dispute and because the defendant has failed to show that there is an absence of evidence to support the plaintiff's case, the court denies the defendant's summary judgment motion with respect to this claim. *Cone,* 14 F.3d at 529; *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

### 2. *Age Discrimination.*

The defendant does not challenge the plaintiff's prima facie case. However, the defendant does offer the same arguments in support of its purported legitimate non-discriminatory reasons justifying why Ms. Brown promoted Ms. Gleich instead of the plaintiff. Because the court previously concluded that the plaintiff has successfully rebutted, for purposes of summary judgment, those reasons as pretextual, the court also denies the defendant's summary judgment motion with respect to this claim. *Cone,* 14 F.3d at 529; *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

## *C. EPA standard.*

A complaint under the EPA must be filed in a district court within two years of the alleged violation regardless of whether an administrative claim is pursued. 29 C.F.R. § 1614.409 The limitation is expanded to three years where the violation is willful. *Id.* A violation of the EPA is willful when

9. Mr. Geary stated in his deposition that he was never offered the GS–13 position in the Kansas City office and that had he been offered the position, he would have accepted it.

10. The plaintiff argues that The AE Program violates Title VII and his Equal Protection rights under the United States Constitution because it contains quotas that exclude white males from consideration and because its objective is to increase the promotion rates of females, regardless of qualifications, market conditions, and who applies. However, the plaintiff's argument is flawed because he incorrectly believes that it is the defendant's burden to demonstrate the validity of The AE Program by showing that it is based on a manifest imbalance that reflects underrepresentation of women in traditionally segregated job categories. Rather, the plaintiff has the burden of showing that The AE Program is invalid, which he has clearly not met. *Johnson v. Transportation Agency, Santa Clara County, Cal.,* 480 U.S. 616, 626–28, 107 S.Ct. 1442, 1449, 94 L.Ed.2d 615 (1987). As a result, the court rejects this argument.

the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681–82, 100 L.Ed.2d 115 (1988).

■ To establish a prima facie case of pay discrimination in violation of the EPA, the plaintiff must show that (1) he was performing work which was substantially equal to that of the female employees considering the skills, duties, supervision, effort and responsibilities of the jobs, (2) the conditions where the work was performed were basically the same, (3) the female employees were paid more under such circumstances. *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir.1993). If the plaintiff establishes a prima facie case, the defendant must show that there existed reasons for the wage disparity which are described in the EPA. *Id.* These reasons are: (1) a seniority system, (2) a merit system, (3) a pay system based on quantity or quality of output, (4) a disparity based on any factor other than sex. 29 U.S.C. § 206(d)(1).

### *D. Analysis.*

The plaintiff argues that in 1990–93 female investigators, including Ms. Brown and Ms. Gleich, were paid overtime for record reviews and interviews while he was not and that he was not permitted to work overtime on such assignments. The plaintiff allegedly complained to Mr. Bahr, his supervisor, who allegedly did not investigate his complaints. Based on these alleged complaints, the plaintiff contends that the defendant's violation was willful. The defendant asserts that the plaintiff cannot state a prima facie case and that even if he can state a prima facie case, he did not timely file his EPA claim.

Because the alleged EPA violations occurred before June of 1993 [11] and because the plaintiff filed this lawsuit on July 26, 1995, the plaintiff must show that the defendant's alleged EPA violations were willful and that the violations occurred between July 26, 1992, and June of 1993, or else his EPA claim is time barred. 29 C.F.R. § 1614.409. The only evidence the plaintiff presents relevant to the issue of willfulness is that he allegedly complained to Mr. Bahr, his supervisor, along with the copy of the Administratively Uncontrollable Overtime policy provided to the plaintiff by Mr. Bahr with underlining and notes which indicated to the plaintiff that he was not to receive overtime for record reviews or report writing. The plaintiff presents no specific evidence of any EPA violations occurring between July 26, 1992, and June of 1993.

■ Construing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff's EPA claim is time barred. While there is clearly a controverted fact question concerning whether the defendant either knew or showed reckless disregard for the matter of whether its alleged conduct was prohibited by the EPA, the defendant correctly points out that the plaintiff has failed to produce any evidence of an EPA violation occurring within three years of filing his lawsuit as required under 29 C.F.R. § 1614.409. Simply alleging that female investigators were improperly compensated for overtime work in 1993 is not sufficient to satisfy his summary judgment burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Rather, once challenged, the plaintiff has the burden to produce evidence indicating that between July 26, 1992, and June of 1993, female employees were paid overtime for work for which the plaintiff was denied overtime compensation. *Id.* Because the record contains no evidence of such overtime payments to female investigators after July 26, 1992, the court grants the defendant's motion for summary judgment with respect to the plaintiff's EPA claim. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

**IT IS THEREFORE ORDERED BY THE COURT** that the plaintiff's objections to the defendant's reply evidence (Doc. # 64) and the defendant's motion to file a response to the plaintiff's objections to the defendant's

11. The plaintiff's complaint is confined to the time period before Mr. Bahr's retirement in June of 1993.

reply evidence (Doc. # 65) are denied as moot.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Doc. # 57) is denied with respect to the plaintiff's age and gender discrimination claims and granted with respect to the plaintiff's equal pay claim.

**IT IS SO ORDERED.**