992 F.2d 244
 62 Fair Empl.Prac.Cas. (BNA) 980,
61 Empl. Prac. Dec. P 42,236,
126 Lab.Cas. P 57,481, 8 IER Cases 1766
 Raul C. SANCHEZ, Plaintiff-Appellee, Cross-Appellant,
v.
PHILIP MORRIS INCORPORATED, a foreign corporation and d/b/a
Philip Morris USA, and Ralph Rayburn, sued in both
his individual and representative
capacities,
Defendants-
Appellants,
Cross-Appellees.
 Nos. 91-6354, 91-6371.
 United States Court of Appeals,
Tenth Circuit.
 April 20, 1993.
 
 Elizabeth Scott Wood (M. Richard Mullins, with her on the briefs, McAfee & Taft, P.C., of counsel), Oklahoma City, OK, for defendants-appellants, cross-appellees.
 Frederick W. Southern, Jr. (Kermit V. Jones, with him on the briefs), Oklahoma City, OK, for plaintiff-appellee, cross-appellant.
 Before McKAY, Chief Judge, SETH and McWILLIAMS, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 Appellee Raul C. Sanchez filed an action against Appellants Philip Morris, Inc. ("Philip Morris") and Ralph Rayburn alleging reverse gender and national origin discrimination in violation of Title VII of the federal Civil Rights Act, as well as violations of Oklahoma public policy. After dismissing the state public policy claim, the United States District Court for the Western District of Oklahoma found Appellants liable on both theories and awarded damages. Appellants appeal the imposition of liability, and Appellee cross-appeals the district court's dismissal of the public policy tort claim. Both parties appeal the damage award. Our jurisdiction over this appeal arises under 28 U.S.C. § 1291. We reverse on the issue of liability and affirm the district court's dismissal of the public policy tort claim.
 
 
 2
 The dispositive facts in this case are essentially undisputed. Mr. Rayburn is a division manager for Philip Morris and is authorized to hire entry level sales personnel. On three different occasions, Appellee, a Hispanic male, applied for an entry level sales position with Philip Morris. The minimum requirements for such a position are that an applicant be at least twenty-one years old and possess a valid driver's license. Although Appellee satisfied these minimum requirements, the Appellants hired one Caucasian male and two Caucasian females for the three sales positions.
 
 
 3
 Mr. Rayburn testified that he was impressed with and interested in hiring Appellee after interviewing Appellee for the first sales position. Although Mr. Rayburn did not hire Appellee, he retained Appellee's application for future consideration. Thereafter, a second sales position became available in another division of Philip Morris managed by Mr. Lay. Mr. Rayburn forwarded Appellee's application to Mr. Lay, and together they interviewed Appellee for the position. Mr. Lay was not impressed with Appellee, and Mr. Rayburn conceded that Appellee's second interview was not as good as the first. Again Appellee was not hired, but his application was retained. Appellee was not interviewed for the third sales position for which another applicant, Loraine Smoot, was hired by Mr. Rayburn. While it is clear from the record that Appellee was in fact considered for the three positions to which he applied, other applicants were hired because according to the Appellants they were better qualified.
 
 
 4
 At trial, Appellee proffered evidence to establish a prima facie case of disparate treatment in a failure to hire context by showing that he was a member of a protected class, that he was qualified for the sales positions, and that of the three people actually hired none were Hispanic and two were women. At the close of Appellee's case, the Appellants filed a motion for judgment, claiming the Appellee had failed to meet his burden of proof. The district court took the motion under advisement.
 
 
 5
 In order to rebut the inference of intentional discrimination created by Appellee's prima facie case, the Appellants' witnesses testified that they always hire the best qualified applicant and that Appellee was not the best qualified for any of the three positions. The district court found this to be a facially nondiscriminatory reason explaining Appellants' failure to hire Appellee.
 
 
 6
 In its Findings of Fact and Conclusions of Law the district court found that the Appellee proved a prima facie case of discrimination on both theories. This finding impliedly denied Appellants' motion for judgment. In addition, the district court concluded that the two applicants who were hired for the first openings, instead of Appellee, were in fact more qualified than Appellee. However, the court observed as to the third opening that Appellee was more qualified than Loraine Smoot who was hired, and therefore the Appellants' "assertion that the selected applicant was the best person for the position [wa]s not the true reason for their hiring decision but was merely a pretext for discrimination" in violation of Title VII.
 
 
 7
 The district court's finding that the Appellee was better qualified than Loraine Smoot was based on its comparison of their educational and occupational backgrounds, which we will briefly summarize. Appellee possessed a two-year college degree as well as over twelve years of experience in the food industry with increasing levels of responsibility from stock clerk for a supermarket to the manager/owner of a convenience store. Appellee's various jobs furnished him with experience in marketing, retail sales, accounting, and hiring, firing and supervision of employees. On the other hand, prior to applying for the sales position with Philip Morris, Loraine Smoot had been a school secretary for thirteen years. As the school's secretary, she was responsible for fund raising activities, record keeping and communicating with virtually everyone related to the school. She also had worked contemporaneously as a part-time sales person for a department store for seven years.
 
 
 8
 On appeal, the Appellants argue that the district court erred (1) by not granting their motion for "directed verdict" because Appellee failed to establish a prima facie case, (2) by imposing liability on Appellants because the court improperly substituted its own business judgment and did not make any finding of unlawful discriminatory animus, and (3) even if liability were appropriate, by awarding excessive damages. In his cross-appeal, which will be addressed later in this opinion, Appellee contends that the district court erroneously dismissed his state public policy tort claim and that the court should have ordered instatement and injunctive relief.
 
 
 9
 It is well settled in this circuit that the burden-shifting format set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable to the analysis of Title VII claims of disparate treatment. However, in Fallis v. Kerr-McGee Corp., 944 F.2d 743, 744 (10th Cir.1991), we declared:
 
 
 10
 "At this stage in the proceedings, after a full trial on the merits, the sequential analytical model from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-04, 93 S.Ct. 1817, 1823-25, 36 L.Ed.2d 668 (1973), consisting of (1) plaintiff's prima facie case of ... discrimination, (2) the defendant's legitimate business justification, and (3) the plaintiff's rebuttal showing of pretext and/or improper motivation, which guided the trier's consideration of this case, drops out...."
 
 
 11
 See also United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981); Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1237 (10th Cir.1991). Consequently, with respect to the Title VII liability dispute before this court, we are left with a single issue of whether the Appellee adduced sufficient evidence to warrant a determination that the Appellants intentionally discriminated against Appellee based on gender or national origin by hiring Loraine Smoot. See Aikens, 460 U.S. at 715, 103 S.Ct. at 1481; Fallis, 944 F.2d at 744.
 
 
 12
 We emphasize that the plaintiff in a Title VII case must prove that intent to discriminate based upon plaintiff's protected class characteristics was the determining factor for the allegedly illegal employment decision. Equal Employment Opportunity Commission v. Flasher Co., Inc., 986 F.2d 1312 (10th Cir.1992). See also Burdine, 450 U.S. at 256, 101 S.Ct. at 1095; Lucas v. Dover Corp., Norris Div., 857 F.2d 1397 (10th Cir.1988). Because the prima facie case only creates an inference of unlawful discrimination, some evidence that the articulated legitimate business reason for the decision was pretextual does not compel the conclusion that the employer intentionally discriminated. Flasher, 986 F.2d at 1321, (citing Benzies v. Illinois Dep't of Mental Health & Developmental Disabilities, 810 F.2d 146, 148 (7th Cir.1987) (although pretext is shown, motivation for employer's decision may have been favoritism, revenge, or random or erroneous conduct or judgment, none of which are prohibited by Title VII). If a plaintiff successfully proves that the defendant's reasons are not worthy of credence, the plaintiff must still prove that the true motive for the employment decision violates Title VII. See Furnco Construction v. Waters, 438 U.S. 567, 579, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978) ("McDonnell Douglas prima facie showing is not the equivalent of a factual finding of [intentional] discrimination"); Flasher, 986 F.2d at 1320-21.
 
 
 13
 The ultimate finding of whether there was intentional discrimination against a protected class is a question of fact. Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982). We review such factual findings under the clearly erroneous standard. Pitre v. Western Electric Co., 843 F.2d 1262, 1266 (10th Cir.1988) (if the district court's account of the evidence is plausible, we may not reverse).
 
 
 14
 On appeal, Appellants urge the extreme position that their articulated legitimate reason for not hiring Appellee, i.e., that they hire the best qualified applicant, invokes the business judgment rule, thereby necessarily precluding the district court from comparing the relative qualifications of the Appellee and Loraine Smoot. Such a position is untenable because it would severely limit Title VII by divesting courts of their power to determine if a defendant, who offers this type of business justification, is trying to cover up a gross disparity which could be one of several factors in a discriminatory action. The reality of the entire situation must be examined. However, Appellants correctly observe that district courts are not in the position of determining whether a business decision was good or bad. See Fallis, 944 F.2d 743; Lucas, 857 F.2d at 1404 (court will not second-guess business judgment in absence of improper motive); Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988). Title VII is not violated by the exercise of erroneous or even illogical business judgment. See Pollard v. Rea Magnet Wire Co., Inc., 824 F.2d 557, 559 (7th Cir.1987). An employer's business judgment is relevant only insofar as it relates to the motivation of the employer with respect to the allegedly illegal conduct. See Aikens, 460 U.S. 711, 103 S.Ct. 1478; Burdine, 450 U.S. at 259, 101 S.Ct. at 1097; Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1114 (1st Cir.1989) (motives, not business judgment, are at issue); Wrenn v. Gould, 808 F.2d 493, 503 (6th Cir.1987). Therefore, the district court in the case before us was empowered to compare the qualifications of Appellee and Loraine Smoot within the above limitations.
 
 
 15
 Throughout this case, the Appellee has attempted to prove intentional discrimination by comparing his "objective" job qualifications with those of Loraine Smoot. The Appellee insists that because he was so much more qualified than Loraine Smoot, the Appellants' articulated reason is a pretext for intentional discrimination as above considered. It is conceivable that a plaintiff in a case such as this could be so overwhelmingly better qualified than another applicant that on this evidence alone a trial court could properly find pretext and intent to discriminate. However, the facts in the record do not suggest this was such a case. There was a difference in the qualifications of the two applicants here concerned. There was a difference in their experiences. The trial court stated that the successful applicant was "not nearly as well qualified." We must assume that the company employees who did the hiring knew what particular qualifications and experiences were necessary. The trial court did not suggest that the difference in "qualifications" was the equivalent of discrimination. Again the court made no finding of discrimination. Instead it considered that its finding of differences in qualifications was in itself sufficient to support a judgment for Appellee. This cannot be. Branson v. Price River Coal Co., 853 F.2d 768 (10th Cir.1988).
 
 
 16
 The trial court in a previous hiring held that there the successful applicant, not Appellee, was the better qualified and that determined the outcome. As noted above, we are not in the business of determining whether an employer acted prudently or imprudently in its hiring decisions. Consequently, even if we were to agree that the Appellants exercised poor business judgment in hiring the lesser qualified Loraine Smoot, the district court's conclusions do not follow as the evidence at most demonstrated an application of what might be poor business judgment. See Branson, 853 F.2d at 772 (assertion that plaintiff was equally or more qualified than person retained is insufficient to prove pretext). Therefore, we must conclude that the district court must have erroneously substituted its own business judgment for that of the Appellants in finding that the Appellants' articulated justification was pretextual.
 
 
 17
 Furthermore, assuming that Appellants' articulated reason was pretextual, there is insufficient evidence they intended to discriminate in violation of Title VII. Appellee attempted to prove intentional discrimination with circumstantial evidence. However, there were no facts produced at trial which would constitute circumstantial evidence of intentional discrimination. This is demonstrated by the fact that the district court did not find unlawful discrimination. Rather, there was a consistent and affirmative showing of a determination that the Appellee be considered in each of the several instances of hiring and that he was so considered. Simply put, the Appellee failed to prove that his not being hired was motivated by an intent to unlawfully discriminate, as opposed to a mere mistake, favoritism or some other reason. We therefore hold that the district court erred by imposing Title VII liability on the Appellants under both the reverse gender and national origin theories.
 
 
 18
 In addition to the foregoing, we must hold that the district court erred by not granting Appellants' motion under Rule 41(b) on the reverse gender discrimination claim. In Livingston v. Roadway Express, Inc., 802 F.2d 1250, 1252 (10th Cir.1986) (holding that "background circumstances" must be shown in disproportionate impact as well as disparate treatment reverse gender discrimination cases), we stated:
 
 
 19
 "When a plaintiff who is a member of a favored group [such as males] alleges disparate treatment, the courts have adjusted the prima facie case to reflect this specific context by requiring a showing of 'background circumstances [which] support the suspicion that the defendant is that unusual employer who discriminates against the majority.' "
 
 
 20
 (Citations omitted.) As no showing of such "background circumstances" was made in this case, the Appellee failed to establish a prima facie case of reverse gender discrimination. Accordingly, the district court should have granted Appellants' motion on this theory of liability.
 
 
 21
 In regard to Appellee's cross-appeal, the controlling issue is whether the district court erred in dismissing the Oklahoma public policy tort claim. Appellee's public policy tort claim is based on the exception to the Oklahoma employment-at-will doctrine that was enunciated in Burk v. K-Mart, 770 P.2d 24 (Okla.1989). In Burk, 770 P.2d at 28, the Oklahoma Supreme Court adopted
 
 
 22
 "the public policy exception to the at-will termination rule in a narrow class of cases in which the [wrongful] discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law."
 
 
 23
 In other words, Oklahoma recognizes a separate public policy tort claim for plaintiffs alleging facts sufficient to state a claim that they were wrongfully discharged in violation of, inter alia, Title VII, despite Oklahoma's historical adherence to the employment-at-will doctrine.
 
 
 24
 To further support his contention that his public policy tort claim is actionable, Appellee cites Tate v. Browning-Ferris, Inc., 833 P.2d 1218 (Okla.1992). In Tate, 833 P.2d at 1220, the Oklahoma Supreme Court was certified the following question:
 
 
 25
 "Where an at-will employee terminated by a private employer files suit alleging facts that, if true, violate state and federal statutes providing remedies for employment discrimination, can the employee-plaintiff state a tort cause of action based on the same facts, pursuant to the public policy exception to the at-will termination rule, recently recognized by the Oklahoma Supreme Court in Burk v. K-Mart, 770 P.2d 24 (Okla.1989)?"
 
 
 26
 The court in Tate gave a categorically "affirmative" answer. Id.
 
 
 27
 Appellee maintains that the broad language in Tate admonishing employment discrimination supports the conclusion that Oklahoma has expanded the Burk public policy tort exception to include wrongful failure to hire claims based on alleged violations of the Oklahoma Anti-Discrimination Act, Okla. stat. tit. 25, §§ 1101-1901 (1981). A careful reading of Tate reveals that it was limited to wrongful terminations motivated by race or retaliation, which is closely related to the Burk wrongful discharge exception. The Tate decision simply does not make all Title VII cases actionable under the public policy tort exception enunciated in Burk. We note that the Oklahoma Supreme Court has been very precise in carving out narrow exceptions to the employment-at-will doctrine, and we are unwilling to unnecessarily expand those exceptions. Therefore, the district court properly dismissed Appellee's public policy tort claim as Oklahoma has yet to create an exception to the employment-at-will doctrine in the failure to hire context.
 
 
 28
 Because we hold that the district court erred in imposing Title VII liability and correctly dismissed Appellee's state public policy tort claims, we do not reach the contested issues concerning the damage award.
 
 
 29
 Accordingly, the district court decision below is REVERSED in part and AFFIRMED in part. IT IS SO ORDERED.