**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JEANNE ROBERTS,

       Plaintiff-Appellant,

v.

THE STATE OF OKLAHOMA, on
behalf of the Board of Regents of
Oklahoma Colleges, a body corporate;
UNIVERSITY OF CENTRAL
OKLAHOMA,

       Defendants-Appellees.

No. 95-6235
(W. Dist. of Oklahoma)
(D.C. No. CIV-94-922-M)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **HOLLOWAY,** and **MURPHY**, Circuit Judges.

      Jeanne C. Roberts appeals the district court's grant of summary judgment in

favor of the appellees on her Title VII gender discrimination claim as well as its

dismissal of her Oklahoma public policy tort claim. In her complaint, Roberts

alleged that the University of Central Oklahoma passed her over for a faculty

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

position and that the failure to hire her was impermissibly gender-based. With regard to Roberts' Title VII claim, the district court ruled that Roberts failed to state a *prima facie* case of discrimination because she could not demonstrate that she was qualified for the position. It further concluded that the appellees had stated a legitimate, nondiscriminatory reason for not hiring Roberts and that Roberts failed to create a genuine issue of material fact as to discrimination. The district court also dismissed Roberts' state tort claim, finding that Oklahoma would not recognize a public policy cause of action for wrongful failure to hire. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and affirms.

## I. BACKGROUND

From January 1991 to May 1993, Roberts was employed by the University of Central Oklahoma (the "University") as a nontenure-track lecturer in the Department of Funeral Service Education (the "Department"). The University is a state institution of higher education governed by the Board of Regents of Oklahoma Colleges. Both the Board of Regents and the State of Oklahoma are co-appellees with the University (all appellees are collectively referred to as the "University"). Roberts' claim arises out of the University's failure to hire her as a full-time instructor in the Department, a unit of the College of Mathematics and

Sciences (the "College"). She has no complaint about the terms and conditions of her employment or her treatment as an employee.

In the late fall of 1992, the University began recruiting for a faculty position in the Department for the 1993-94 academic year. The University posted an announcement soliciting applications for a full-time instructor of Funeral Service. The announcement indicated that applicants must have a "funeral director/embalmer" license, a master's degree in a related area, and a minimum of three years as a practicing "funeral director/ embalmer." Previous teaching experience was preferred.

Roberts applied for the position in January 1993. A three-person faculty selection committee, composed of Dr. Kenneth Curl, Chairperson of the Department, Dr. Gary Sokoll, and Dr. Thomas Grzybowski, both on the University faculty, screened the four applications received, including Roberts', and selected finalists for interviews. The committee then conducted interviews and made recommendations for employment to G. Kay Powers, the Dean of the College. The committee did not interview Roberts. Chris H. Burkey was recommended to fill the position; Roberts was not.

When she was not offered the job, Roberts complained to Powers about the fairness of the screening process. In order to assuage Roberts' concerns and to generate a larger applicant pool, the University posted a second announcement for

the position. This second announcement generally reiterated the information and requirements from the first. Roberts reapplied for the position in May 1993.

Again, a three-person committee screened the applications and selected finalists for interviews. This second committee consisted of Dr. Sokoll, Dr. Grzybowski, and Ronnie Redinger of the Redinger Funeral Home. All four of the previous applicants reapplied; of the eight applications received this second time, seven were from men. The committee screened the eight applications and interviewed three candidates. The committee recommended to Dr. Curl the interviewees in order of preference as follows: (1) Chris H. Burkey; (2) Thomas Shaw; and (3) David Hess. Neither Shaw nor Hess had been in the first applicant pool. Again, Roberts was not recommended. Moreover, the second committee did not interview the other two repeat applicants from the first round, Gus Embry, Jr., and Larry Wilmeth. Dr. Curl agreed with the second committee's recommendations and forwarded the list to Powers. The University eventually appointed Burkey to the instructor position.

Roberts brought suit in Oklahoma state court alleging that the University failed to hire her for the position of instructor on the basis of her gender. Roberts alleged that the failure to hire her violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and Oklahoma public policy. The University removed the suit to federal court pursuant to 28 U.S.C. § 1441(b). The

United States District Court for the Western District of Oklahoma exercised jurisdiction over the Title VII claim pursuant to 42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. § 1331 and the state-law claim pursuant to 28 U.S.C. § 1367.

The district court granted summary judgment against Roberts on her Title VII claim, holding that she failed to establish a *prima facie* case of discrimination. Specifically, the district court held that Roberts failed to establish she was qualified for the instructor position because her own deposition testimony indicated that she lacked the posted work experience requirements. The announcements for the instructor position specified the requirement of at least three years' experience as a "funeral director/embalmer." Although Roberts' résumé stated that she had over ten years' experience in this capacity, her deposition testimony indicated she had far less than her résumé indicated.[1]

---

[1]On her submitted résumé, Roberts stated she had "over 10 years of professional experience in funeral service [and other] capacities." In addition to her related experience as an adjunct lecturer at the University since 1991, Roberts recounted in her résumé experience in funeral services and embalming from two other sources: (1) Guardian Funeral Homes (the "Loewen Group") from 1990-92; and (2) Wilson Funeral Service ("Wilson") from 1982-85. Furthermore, a letter of recommendation from Frank Bernard, the former manager of Wilson, which was submitted with Roberts's application materials, stated that Roberts "directed hundreds of funerals and embalmed hundreds of bodies."

Roberts' deposition testimony, however, provided a different account of her own work experience. She admitted that her résumé generally overstated her work experience and that she could not have worked at Wilson after the date it burned down. Fire Department records indicate that Wilson burned down on March 11, 1983. Furthermore, in opposing summary judgment, Roberts attempted to establish her work experience by affidavit. She averred additional work

In the alternative, the district court held that even if Roberts had been qualified for the position, the University had advanced legitimate, nondiscriminatory reasons for hiring Burkey instead of Roberts. The district court found that Burkey was at least as qualified as, if not more qualified than, Roberts. Because Roberts could not produce sufficient evidence that the University chose Burkey on a basis other than his qualifications, the district court reasoned that Roberts did not meet her burden of demonstrating the existence of a genuine issue of material fact regarding discrimination. Finally, as to Roberts' state-law claim, the district court held that Oklahoma does not recognize a public policy tort in the failure-to-hire context. As a result, it dismissed this claim. Roberts appeals.

On appeal, Roberts asserts the district court erred as follows: (1) granting summary judgment when there existed genuine issues of material fact; (2) disregarding her affidavit; (3) considering after-acquired evidence to conclude

experience not evident from her résumé and application. She further attempted to explain her confusion at the deposition to account for disparities between her deposition testimony and her affidavit.

The district court, however, noted that Roberts' affidavit was in conflict with both her deposition testimony and her résumé. The court further noted that while she attempted to explain the differences between her deposition and affidavit, she made no attempt to rectify the inconsistencies between her affidavit and résumé. It then concluded this was an attempt to create a sham material issue of fact and disregarded the portions of the affidavit relating to her work experience. As a result, the district court concluded that Roberts could not establish the qualifications element of her gender discrimination claim.

-6-

Roberts was not qualified; (4) considering facts not specified in the statement of uncontroverted facts; (5) applying the wrong standard regarding pretext; (6) failing to allow full and complete discovery; and (7) dismissing the state-law claim rather than remanding it to state court.

## II. ANALYSIS

### A. Title VII Claim

#### 1. Standards

We review the grant of summary judgment *de novo* and apply the same legal standard used by the district court under Fed. R. C. P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). But "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, "[w]e must view the evidence and any possible inferences most favorably to the nonmoving party to ascertain whether a genuine issue of fact exists." *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1117

(10th Cir. 1991). To survive summary judgment, however, the nonmoving party cannot rest on its pleadings and must "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We then review any legal questions *de novo*. *MacDonald*, 941 F.2d at 1118.

Title VII of the Civil Rights Act of 1964 prohibits the failure or refusal to hire any individual on the basis of race, color, religion, gender, or national origin. 42 U.S.C. § 2000e-2(a)(1). "The 'factual inquiry' in a Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.'" *United States Postal Serv. v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). A plaintiff may prove intentional discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

*2. Direct Evidence*

Direct evidence of discrimination is evidence of "an existing policy which itself constitutes discrimination." *Ramsay v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990), *cert. denied*, 506 U.S. 907 (1992); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 256 (1989) (plurality opinion) (holding that

-8-

plaintiff had provided direct evidence through firm's solicited evaluations containing stereotyping comments relied upon in making employment decisions); *EEOC v. Wyoming Retirement Sys.*, 771 F.2d 1425, 1430 (10th Cir. 1985) (holding that statute creating age-based employment distinction was direct evidence). When a plaintiff advances direct evidence of discriminatory intent, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is unnecessary. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Heim v. Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993).

Statements which are merely expressions of personal opinion or bias, however, do not constitute direct evidence of discrimination. *See EEOC v. WilTel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996) (listing examples of personal opinion or bias). The court in *WilTel* held that because such statements required the factfinder to infer that discrimination was a motivating cause of an employment decision, they are only circumstantial evidence of discriminatory intent. *Id.* It is in this context we consider what Roberts characterizes as direct evidence of discrimination.

Roberts asserts that the Chairperson of the Department, Dr. Curl, said he had not advised her of the job opening because he assumed as a newlywed she would want to stay at home. Roberts further alleges that Dr. Curl ignored reports of gender discrimination. She claims Dr. Curl improperly formed and served on

-9-

the first screening panel and that the make-up of this panel violated University regulations because it did not include a female representative. Roberts also contends that as a result of her complaint about the first screening panel, Dr. Curl actively solicited complaints about Roberts' teaching performance. Even assuming Dr. Curl did not have final decisionmaking authority, she concludes he played a substantial role in the selection process. Roberts finally contends that Dr. Curl's involvement with the selection of the instructor, in conjunction with the evidence of his biases, constitutes direct evidence of discrimination.

These assertions by Roberts, however, only constitute circumstantial or indirect evidence of discrimination. The statements and attitudes Roberts attributes to Dr. Curl may indicate personal bias against Roberts and perhaps against women in general. Nevertheless, Roberts did not demonstrate, as she must, that Dr. Curl acted on his allegedly discriminatory beliefs. *See Ramsey*, 907 F.2d at 1008. Direct evidence of discrimination does not necessarily exist where there is only direct evidence of personal bias. *Id.* Although "stereotyped remarks can certainly be *evidence* that gender played a part" in the employment decision, such remarks do not "inevitably" prove that part. *Price Waterhouse*, 490 U.S. at 251 (plurality opinion) (emphasis in original). Roberts' evidence requires the factfinder to infer the University's discriminatory animus in the employment decision; it is not direct evidence of discriminatory intent. *Furr v. AT&T*

*Technologies, Inc.*, 824 F.2d 1537, 1549 (10th Cir. 1987) (holding that evidence of discriminatory statements from which determining cause of employment decision *might* be inferred is not direct evidence of causation).  The district court was thus correct to conclude that Roberts had not submitted direct evidence of discrimination.

    *3.*  McDonnell Douglas *Burden Shifting*

A plaintiff may establish a claim of discrimination indirectly through the use of circumstantial evidence, based upon the burden-shifting format first delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In order to establish a violation of Title VII for failure to hire, a plaintiff is required to prove the following elements:  (1) she was a member of a protected class; (2) she applied for and was qualified for an available position; (3) she was rejected despite those specific qualifications; and (4) the defendant hired other persons possessing Roberts's qualifications who were not members of her protected class. *Id.* at 802; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

Establishment of the *prima facie* case creates a presumption that the defendant unlawfully discriminated against the plaintiff.  *Burdine*, 450 U.S. at 254.  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802; *EEOC v. Flasher*

*Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992). If the defendant meets its burden of producing a facially nondiscriminatory reason for its failure to hire the plaintiff, the presumption of discrimination established in the *prima facie* case evaporates. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). The plaintiff then has the burden of persuasion to show the defendant discriminated against her in its employment decision on the impermissible basis of her gender. *Id.* at 507-08. The plaintiff may do so either by showing that the proffered reason is a pretext for illegal discrimination or by providing direct evidence of discrimination. If a plaintiff produces evidence establishing the *prima facie* case and evidence upon which the factfinder could conclude that the defendant's proffered nondiscriminatory reasons for the employment decision are pretextual, summary judgment must be denied. *Durham v. Xerox Corp.*, 18 F.3d 836, 839-40 (10th Cir.), *cert. denied*, 115 S. Ct. 80 (1994).

As noted above, the district court held Roberts did not establish a *prima facie* case because she could not demonstrate that she was qualified for the position at issue. In reaching this conclusion, the district court relied on evidence developed during discovery which demonstrated that Roberts had falsified her credentials. On appeal, the parties vigorously contest the propriety of using after-acquired evidence of Roberts' qualifications. Roberts contends the recent decision in *McKennon v. Nashville Banner Publishing Co.*, 115 S. Ct. 879 (1995),

categorically prohibits the use of after-acquired evidence during the liability

phase of an employment discrimination case. The University, on the other hand,

contends that *McKennon* does not operate to relieve Roberts of the burden of

establishing her qualifications as part of her *prima facie* case. We conclude that

it is unnecessary to resolve this difficult issue[2] because regardless of whether

Roberts has established a *prima facie* case, the University has advanced a

legitimate, non-discriminatory reason for not hiring Roberts and she is unable to

demonstrate the existence of a genuine issue of material fact regarding pretext.[3]

As an alternate ground for granting the University summary judgment, the

district court held that "Ms. Roberts has failed to present sufficient evidence to

---

[2]We note the two courts that have considered this issue (albeit with little analysis) have split on the applicability of *McKennon v. Nashville Banner Publishing Co.*, 115 S. Ct. 879 (1995), to failure-to-hire cases. *Compare Egbuna v. Time-Life Libraries, Inc.*, 95 F.3d 353, 357 (4th Cir. 1996) (applying *McKennon* at *prima facie* stage in failure-to-rehire case), *opinion vacated & reh'g en banc granted* (Dec. 17, 1996) *with McNemar v. Disney Store, Inc.*, 91 F.3d 610, 621 (3d Cir. 1996) (holding that *McKennon* does not apply at *prima facie* stage of failure-to-hire case), *cert. denied*, 65 U.S.L.W. 3561 & 3568 (U.S. Feb. 18, 1997) (No. 96-966). Furthermore, at least three other courts have indicated in dicta, with no analysis, that the rule of law set out in *McKennon* might not apply in failure-to-hire cases. *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1108 (5th Cir. 1995); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1240 (4th Cir. 1995); *Wallace v. Dunn Constr. Co.*, 62 F.3d 374, 379 n.8 (11th Cir. 1995).

[3]Because we choose to assume that Roberts was qualified for the position and therefore established a *prima facie* case, we need not address her claim that the district court erred in considering after-acquired evidence, in disregarding the qualifications set out in her affidavit, and in failing to enforce local rules regarding summary judgment.

raise a genuine issue that [the University] selected Mr. Burkey over Ms. Roberts with the intent to discriminate against Ms. Roberts because of her sex." In reaching this conclusion, the district court held that even considering the qualifications set out in Roberts' affidavit, she was at best equally qualified for the job. According to the district court, Roberts' relative qualifications did not support her claim of pretext. Furthermore, the district court held that the University's claim that Burkey was better qualified was a credible, legitimate, non-discriminatory, business reason and was therefore subject to deference. Finally, the district court concluded that evidence presented by Roberts concerning procedural irregularities in the hiring process did not "raise a genuine issue that [the University] intentionally discriminated against Ms. Roberts on the basis of her sex." Instead, according to the district court, that evidence raised issues of favoritism, revenge, personality conflicts or bad judgment."

On appeal, Roberts contends that the district court utilized an improper standard to determine whether Roberts created a genuine issue of material fact regarding pretext. We agree. A close reading of the district court opinion reveals that it granted summary judgment because Roberts "failed to raise a genuine issue that [defendants] intentionally discriminated against [her] on the basis of her sex." This language, coupled with the district court's citation to the Fifth Circuit panel decision in *Rhodes v. Guiberson Oil Tools*, 39 F.3d 537, 541-42 (1994),

-14-

*rev'd on reh'g en banc*, 75 F.3d 989 (5th Cir. 1996), leads to the inevitable conclusion that the district court here applied a pretext-plus standard for overcoming the summary judgment motion.

In *Rhodes*, a panel of the Fifth Circuit held that the term pretext means pretext for discrimination. Under the approach taken by the panel in *Rhodes*, to establish that a proffered reason for an action taken by an employer was pretext for discrimination, the plaintiff must show *both* that the employer's proffered reason was false *and* that discrimination was the real reason. *Id.*[4] This so-called

[4]On rehearing *en banc*, the Fifth Circuit appears to have retreated from the panel's holding that evidence an employer's articulated reason is false, standing alone, is *never* sufficient to support a finding of discrimination. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996) (*en banc*) ("In tandem with a prima facie case, the evidence allowing rejection of the employer's proffered reason will often, perhaps usually, permit a finding of discrimination without additional evidence."). It is not clear, however, that the Fifth Circuit has abandoned the pretext-plus standard altogether. *See id.* at 994 (holding that a plaintiff can avoid summary judgment only if she "(1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer **and** (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains." (emphasis added)); *see also id.* at 997-99 (Garza, J., specially concurring) (asserting that prima facie case coupled with evidence of pretext is always sufficient to send case to jury and prima facie case coupled with jury finding of pretext is always sufficient to support jury verdict in favor of plaintiff); *id.* at 999-1000 (DeMoss, J., concurring and dissenting) (concurring with majority that "evidence will be sufficient to support a jury finding of [] discrimination *only* when a rational fact-finder could reasonably infer that age was a determinative reason for the employment decision"); *id.* at 999 n.1 (DeMoss, J., concurring and dissenting) (asserting that Garza, J., concurring specially, was really dissenting from "the majority's holding that evidence that an employer's articulated reason is false does not independently support a jury finding of discrimination").

pretext plus standard has been specifically rejected in the Tenth Circuit. *Randle v. City of Aurora*, 69 F.3d 441, 452 n.17 (10th Cir. 1995). In a *Randle* footnote, the *en banc* court held that a "civil rights plaintiff may withstand a motion for summary judgment and is entitled to present his claim to the fact finder if the plaintiff establishes a prima facie case and presents evidence that the defendant's proffered nondiscriminatory reason was pretextual-- i.e., unworthy of belief." *Id.*

Under the pretext-plus standard, the district court expected Roberts to demonstrate the existence of a genuine issue of fact regarding pretext and, in addition, to advance some evidence of discriminatory intent. Accordingly, the district court never specifically addressed the pretext issue but, instead, focused on whether Roberts created a genuine issue of material fact regarding discrimination. Under *Randle*, however, Roberts is entitled to take her case to the jury upon a simple showing of pretext. Thus, the district court never answered the key question: whether Roberts presented evidence which, if believed by a jury, would demonstrate that the University's claim that it hired the most qualified person is unworthy of belief. *Id.* We therefore turn our attention to that question.[5]

---

[5]This court can "affirm the district court's decision to grant summary judgment if the record contains any basis to do so." *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir. 1995).

-16-

Roberts asserts that she has adduced evidence of pretext by demonstrating that the University has changed its justification for the hiring decision. *See Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993) (holding that "fundamentally different justifications for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason"). Her assertion is incorrect. In its summary judgment motion, the University averred that Roberts did not state a *prima facie* case (i.e., she was not qualified for the job) because she did not have the three years of experience as a funeral director. Roberts claims this legal assertion is a change in justification from the explanation that the University hired Burkey because he was the most qualified applicant. The University's contention that Roberts has not stated a *prima facie* case is not, however, inconsistent with its claim that it hired Burkey because he was the most qualified applicant. The first is a legal assertion that Roberts cannot prove a necessary element of her cause of action; the second is an assertion of fact as to the University's proferred reason for the hiring decision. Accordingly, the University has never asserted Roberts' lack of experience as the reason she was not hired and has, therefore, never changed its justification for the hiring decision.

Roberts also contends that she established pretext by presenting evidence from which a jury could conclude that she was better qualified than Burkey because of greater teaching experience, more recent experience in the industry, and progress toward a doctorate. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) ("Pretext can be inferred . . . from evidence that a plaintiff that was not promoted was more qualified than those employees who were promoted."); *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) ("Proof that [plaintiff] was more qualified would disprove [the employer's] only explanation for its actions, that [plaintiff] was less qualified than the successful candidates."). Although we agree that the relative qualifications of Roberts and Burkey are relevant to the issue of pretext, we are mindful that courts "are not in the position of determining whether a business decision was good or bad. Title VII is not violated by the exercise of erroneous or even illogical business judgment." *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 247 (10th Cir. 1993) (citation omitted).

With these precepts in mind, we have compared, in a light most favorable to Roberts, the qualifications advanced by Roberts with those set out in the record for Burkey. That review leads this court to the same conclusion reached by the district court: Roberts was, at best, as qualified as Burkey for the job. Although Roberts' evidence indicates she had teaching experience and more recent

experience in the field of funeral service, that same evidence also indicates Burkey had a degree in the field of funeral science, had academic credentials clearly superior to Roberts', and also had teaching experience as an adjunct professor at the University. In light of the relative parity of Burkey and Roberts' qualifications, we conclude that no reasonable jury could find pretext based upon a comparison of qualifications. *Liberty Lobby*, 477 U.S. 242 at 248.

Finally, Roberts claims she created a genuine issue of material fact regarding pretext by producing evidence of procedural irregularities in the screening process. Roberts notes that Dr. Curl sat on the first screening committee even though University policies prohibit the department chair from sitting on such committees. Furthermore, neither committee included a woman or minority, despite a University policy which provided that a woman and minority should sit on the committee. Finally, Curl actively solicited student complaints against Roberts while the screening process proceeded. This court has reviewed the record *de novo* and in a light most favorable to Roberts and concludes that none of the evidence of procedural irregularities adduced by Roberts creates a genuine issue of material fact as to pretext concerning the University's claim that it hired the most qualified candidate.

Roberts produced evidence demonstrating that Curl's service on the first screening committee was contrary to the following University policy: "The Dean

and Chairperson are not allowed to serve as committee members for positions within their own respective Department or College." The uncontradicted evidence also demonstrates, however, that when Roberts complained about the fairness of the first screening committee, Powers, the Dean of the College, ordered the position readvertised. A second screening committee was then seated and Roberts reapplied for the position. It is undisputed that Curl did not sit on the second screening committee. Although she contends Curl's service on the first screening committee and his position as chair of the Department allowed him to actually exercise influence over the second screening committee, Roberts did not produce a single piece of evidence to that effect. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."). The undisputed fact that Curl served on the first screening committee, without evidence of more, does not create a genuine issue of material fact as to the University's claim that it hired the most qualified candidate.

Roberts also contends that Curl's solicitation of student complaints about Roberts during the screening process demonstrates mendacity on the part of the University. The problem with Roberts' argument is that she has utterly failed to adduce any proof connecting Curl's actions with the decision to hire Burkey.

Roberts did not, for instance, present any evidence demonstrating that the second screening committee considered complaints generated by Curl or that Curl presented the complaints to the Dean, the Vice President of Academic Affairs, the President of the University, or the Board of Regents. In the absence of actual evidence, rather than speculation, of a connection between Curl's activities and the ultimate hiring decision, his conduct has no bearing on the veracity of the University's claim that it hired Burkey because he was the most qualified candidate. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) (holding that even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment).

Finally, Roberts contends that the University's failure to place a woman on the screening committee in violation of its own policy creates a genuine issue of material fact regarding pretext. We disagree. Unfortunately, Roberts has failed to understand the critical distinction between a mandatory and hortatory policy statement. The policy at issue reads as follows: "The screening committee *should* consist of at least three (3) faculty members knowledgeable of the open position. The committee *should* be composed of at least one male, one female, and one minority. The Dean and Chairperson *are not allowed to serve* as committee members for positions within their own respective Department or College." In

light of the hortatory nature of the pertinent portions of this policy, absent evidence regarding the regularity with which the University complies with this guideline, it is impossible to tell whether the failure to include a woman on the second screening committee is a "disturbing procedural irregularit[y]" of the type necessary to support a finding of pretext. *Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir.), *cert. denied*, 469 U.S. 855 (1984). Although Roberts adduced deposition testimony of Terry L. May indicating that the purpose behind the policy was to further the University's affirmative action goals and to prevent discrimination against women and minority applicants, Roberts has not pointed to any evidence in the record indicating that University screening committees regularly contain both a woman and a minority. Absent such evidence, it is unclear whether the failure to do so here is irregular.[6]

On the record before this court, we conclude Roberts has not met her burden of demonstrating that a genuine issue of material fact exists regarding pretext. The district court did not, therefore, err in granting the University summary judgment. *See Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir. 1995).

---

[6]This court has considered each of the numerous additional alleged procedural anomalies identified by Roberts and, upon *de novo* review, concludes that none of the evidence adduced by Roberts casts doubt on the University's facially nondiscriminatory explanation for its actions.

*B. Oklahoma Public Policy Tort Claim*

Roberts maintains the district court abused its discretion when it dismissed her claim that the University's failure to hire her violated Oklahoma public policy. She contends that Oklahoma recognizes a public policy exception to its employment-at-will doctrine to provide plaintiffs with a state tort claim in the refusal-to-hire context. She argues the district court should have allowed her to proceed on this claim in state court, where her lawsuit began prior to removal.

This court faced a similar argument in *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244 (10th Cir. 1993). The plaintiff in *Sanchez* argued that Oklahoma precedent which created an exception to employment-at-will for terminations motivated by race or retaliation applied to create a cause of action for wrongful failure-to-hire claims. *Id.* at 249. This court rejected the claim, holding that Oklahoma cases were limited and nothing in those cases supported expanding the narrow exceptions. *Id.* On the basis of *Sanchez*, we conclude that the district court did not abuse its discretion when it dismissed Roberts' state tort claim rather than remanding it to state court for further proceedings. *See Sanchez*, 992 F.2d at 249.

*C. District Court's Failure to Allow Additional Discovery*

Roberts contends the district court abused its discretion when it refused to allow her to depose Curl, Sokoll, and Grzybowski a second time. Although it is

doubtful the record on appeal is sufficient for this court to determine whether the district court abused its discretion, we nevertheless reach the merits and affirm.[7]

Roberts alleges that despite a request for all documents related to the screening process, the University failed to inform her that Curl served on the first screening committee until after she had deposed Curl, Sokoll, and Grzybowski. After that disclosure, Roberts filed a motion before the magistrate judge seeking to depose Curl, Sokoll, and Grzybowski a second time. Although the magistrate ordered the University to turn over any additional documents related to the screening process, the magistrate refused to allow the additional depositions. The district court affirmed on appeal.

Fed. R. Civ. P. 30(a)(2)(B) provides as follows: "A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . the person to be examined already has been deposed in the case." This court reviews the denial of leave to conduct a second deposition under Rule 30(a)(2)(B) for an abuse of discretion. *See Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1496 (10th Cir. 1993) (reviewing district court's refusal to grant a Fed. R. Civ. P. 56(f) motion for abuse of discretion).

---

[7]Unfortunately, Roberts never included in the record on appeal a copy of the magistrate judge's oral order denying her leave to redepose several witnesses. Instead, this court is limited to Roberts' interpretation of why the magistrate judge denied the motion. Nevertheless, as discussed below, the record is sufficient to conclude that the magistrate judge did not abuse his discretion.

This Circuit has defined abuse of discretion as "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) (quoting *United States v. Cardenas*, 864 F.2d 1528, 1530 (10th Cir. 1989)) (further quotations omitted).

Although Roberts has failed to include a transcript of the magistrate judge's oral denial of her motion for additional depositions, it is still clear on the record before us that the denial was not unreasonable because Roberts had "ample opportunity by discovery in the action to obtain the information sought." Fed. R. Civ. P. 26(b)(2)(ii). The record clearly demonstrates that at the time she first deposed Curl, Sokoll, and Grzybowski, Roberts was fully aware of the existence of the first screening committee; knew that Curl must have selected the members of the first screening committee; had serious reservations about the fairness of the procedures used by the first screening committee; and believed that Curl was the person responsible for the University's failure to hire her. Furthermore, it is clear that in wide-ranging depositions of Dean Powers, Curl, Sokoll, and Redinger, Roberts' counsel touched on the subject of the first screening committee. He failed, however, to ask the key question: What was the composition of the first screening committee? In light of Roberts' theory of the case, it was not unreasonable for the magistrate judge to conclude that Roberts had ample opportunity to question Curl, Sokoll, and Grzybowski about the first screening

committee during the original depositions of those individuals. Therefore, the district court's refusal to allow additional depositions was not an abuse of discretion.

## IV. CONCLUSION

The district court's grant of summary judgment to the University on Roberts's Title VII claim and its dismissal of Roberts's state tort claim is hereby **AFFIRMED**.

ENTERED FOR THE COURT,


Michael R. Murphy
Circuit Judge