**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JOANNE S. BIRGE,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration, in his
official capacity,[*]

      Defendant-Appellee.

No. 97-2158
(D.C. No. CIV-95-1507-JP)
(D. N.M.)

---

**ORDER AND JUDGMENT**[**]

---

Before **TACHA**, **KELLY**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]    Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel is substituted for Shirley Chater, former Commissioner of Social Security, as the defendant in this action.

[**]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Plaintiff Joanne Birge appeals the district court's grant of summary judgment in favor of the defendant, the Commissioner of the Social Security Administration, on her Title VII disparate treatment gender discrimination claim.  Ms. Birge asserts that the Commissioner did not hire her as an administrative law judge (ALJ) while hiring less qualified males.

## I.  BACKGROUND.

### A.  The ALJ Hiring Process.

To be selected for an ALJ position, an applicant must complete a series of applications with the Office of Personnel Management (OPM).  Applicants considered most qualified are then selected for an interview, after which OPM evaluates all of the information and gives each candidate a numerical rating between 70 and 100.  The candidates are then listed as eligible for selection.  When there is an available ALJ position, OPM places the eligible candidates on a certificate showing each candidate's rank, which is provided to the agency.

When the Social Security Administration decides to fill an ALJ position, its Office of Hearings and Appeals (OHA) sends the eligible candidates a list of available job locations and requests their location preferences.  The OHA interviews candidates and prepares a list of the three highest ranked eligible

-2-

candidates on the certificate for each available location. The appointing officer is to fill the vacancy from among the highest three eligible candidates on the certificate; however, qualified veterans and other "preference eligibles" must be selected if such person is ranked higher than a nonpreference eligible. Subsequent vacancies are filled from the remaining three highest ranked eligible candidates requesting a preference for the available location. An appointing officer is not required to consider an eligible candidate who has been considered for three separate appointments from the same or different certificates for the same position.

## B. Ms. Birge's Application.

Ms. Birge, who is a New Mexico state court judge, applied for an ALJ position in 1993 and was given a score of 93.8. Ms. Birge was interviewed by a panel of three OHA employees, including Jose Anglada, the official responsible for making the final hiring recommendation to the Commissioner. Ms. Birge was included on four certificates of eligible candidates, and was considered three times on each certificate. Ms Birge was never selected for an ALJ position. In some instances, male candidates with higher scores were selected, but in at least four instances, male candidates with lower scores than Ms. Birge's were selected. In two cases, female candidates with lower scores than Ms. Birge's were selected.

After Ms. Birge was interviewed by OHA, but prior to the final hiring selections, one of the ALJs from OHA's Albuquerque office saw a news article in the local paper about Ms. Birge's conduct as a state court judge. He and another Albuquerque ALJ forwarded this article and a subsequent news article about Ms. Birge to Mr. Anglada. The first article, entitled "DA Says Judge Risking Conflicts of Interest," discussed the local district attorney's request that Ms. Birge stop hearing criminal cases because her husband was an attorney in the local public defender's office. The second article, entitled "Metro Judge's Move Irks DA, Clogs Court" stated that Ms. Birge had recused herself at the last minute from forty criminal cases on her docket. The article included the district attorney's statements that he believed Ms. Birge issued the blanket recusal in retaliation against him, and indicated that the last minute recusals could have jeopardized some of the cases because of speedy trial deadlines. Mr. Anglada stated that he decided not to select Ms. Birge for an ALJ position because these news articles made him question Ms. Birge's judicial temperament.

## II. ANALYSIS.

### A. Standard of Review.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review de novo the grant of summary judgment

and apply the same legal standards as the district court under Rule 56." Aramburu v. Boeing Co., 112 F.3d 1398, 1402 (10th Cir. 1997).

### B. Framework.

To assert a claim of disparate treatment, Ms. Birge must show that she was treated differently than other similarly situated nonminority applicants. See Aramburu, 112 F.3d at 1403. To survive summary judgment on her Title VII disparate treatment claim, Ms. Birge is required to produce evidence that she was subjected to intentional discrimination based on her gender. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Randle v. City of Aurora, 69 F.3d 441, 452 (10th Cir. 1995). We evaluate Ms. Birge's evidence pursuant to the burden-shifting scheme first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Burdine, 450 U.S. at 252-53; Elmore v. Capstan, Inc., 58 F.3d 525, 529 (10th Cir. 1995) (McDonnell Douglas format is applicable to the analysis of Title VII claims of disparate treatment).

Under this framework, Ms. Birge had the initial burden of showing a prima facie case of discrimination. She met this burden by showing that she is a member of a protected class; that she applied for and was qualified for an ALJ position; that she was rejected despite her qualifications; and that the position was filled by a male applicant. See Burdine, 450 U.S. at 253 & n.6; Sanchez v. Philip Morris Inc., 992 F.2d 244, 245 (10th Cir. 1993).

The burden then shifted to the Commissioner to show a legitimate, nondiscriminatory reason for his employment decision. See Burdine, 450 U.S. at 254. If the Commissioner satisfies this burden, the burden reverts to Ms. Birge to show that the Commissioner's proffered reasons were not the true reasons for the employment decision. Ms. Birge could meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256.

### C. Legitimate, Nondiscretionary Explanation.

The Commissioner met his burden of production through evidence that Ms. Birge was rejected because of the newspaper articles discussing her potential conflict of interest and her last minute blanket recusal. Ms. Birge contends that the Commissioner did not meet his burden because the given explanation, according to Ms. Birge, is not a "legitimate" reason. Ms. Birge contends that the decision not to hire her was merely the result of Mr. Anglada's subjective personal judgment that she lacked judicial temperament and, because the Commissioner did not investigate the accuracy of the newspaper articles, his reliance on unsubstantiated news articles injected "unrestricted caprice" and "unrestrained subjectivity" into the otherwise objective federal merit selection process. Therefore, Ms. Birge argues that the Commissioner's proffered reason is

not a rational explanation of his failure to hire her, nor is it a valid business reason.

We rejected an argument similar to plaintiff's "failure to investigate" argument in Panis v. Mission Hills Bank, N.A., 60 F.3d 1486 (10th Cir. 1995), cert. denied, 516 U.S. 1160 (1996). There, an employee was dismissed from her position at a bank following newspaper revelations that her husband had been charged with misappropriating funds at another bank. Id. at 1489. The employer's proffered explanation for terminating plaintiff was its fear of losing customer confidence. Id. at 1490. The plaintiff argued that the bank failed to produce a legitimate, nondiscretionary reason for her termination because it failed to conduct an investigation into the allegations or the impact, if any, of the publicity upon the bank's customers, and therefore, the bank failed to justify, with objective evidence, its assumption that her credibility would be questioned. Id. We rejected plaintiff's argument, explaining that, to meet its burden of production, defendant is required only to proffer a reason that is not, on its face, proscribed by Title VII. See id. at 1490-91; EEOC v. Flasher Co., 986 F.2d 1312, 1316 & n.4 (10th Cir. 1992).

"Title VII does not compel every employer to have a good reason for its deeds; it is not a civil service statute." Flasher, 986 F.2d at 1321 (quotation omitted). An employer does not "need to litigate the merits of the reasoning, nor

does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a non-discriminatory fashion." Id. at 1316; Panis, 60 F.3d at 1491. The fact that the Commissioner's proffered explanation rested, in part, upon a subjective determination by Mr. Anglada does not mean the Commissioner failed to meet its burden of production. As the Supreme Court pointed out in McDonnell Douglas itself, the mere fact that subjective criteria are involved in the reason articulated by an employer does not mean it cannot be accorded sufficient rebuttal weight to dispel the inference of discrimination raised by the prima facie case. See McDonnell Douglas, 411 U.S. at 803.

Ms. Birge also contends that the Commissioner's proffered reason is not "legitimate" because it was an illegal explanation. She alleges it was procedurally irregular under the federal merit selection process for the Commissioner to select men with lower scores than hers. She also alleges the Commissioner's failure to investigate and verify the accuracy of the allegations and implications in the newspaper articles violated the Privacy Act, 5 U.S.C. § 552a. Neither argument is persuasive.

Ms. Birge has not presented any evidence that the Commissioner's selection was either illegal or irregular. The relevant merit selection provisions gives the appointing authority discretion to select from among the highest three eligible

candidates so long as the sole basis is merit and fitness. See 5 U.S.C. § 3318(a); 5 C.F.R. § 332.404. The Commissioner's proffered explanation is based on merit and fitness. Further, Ms. Birge has not cited any authority for her assertion that the Commissioner's proffered explanation violates the Privacy Act. Moreover, "even if [the Commissioner's] justification was in fact unlawful under a different statute than [Title VII, he] satisfied its burden of production under McDonnell Douglas by rebutting the inference that [he] acted out of discriminatory animus." Faulkner v. Super Valu Stores, Inc, 3 F. 3d 1419, 1434 (10th Cir. 1993). We agree with the district court's conclusion that the Commissioner met his burden to come forward with a legitimate, nondiscriminatory reason for failing to hire Ms. Birge.

## D. Pretext.

We also agree with the district court that Ms. Birge has not produced sufficient evidence to demonstrate a genuine issue of material fact concerning whether the Commissioner's proffered explanation for failing to hire her is unworthy of belief. Pretext can be shown in employment discrimination cases by "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."

Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). In a disparate treatment case, pretext can be shown by evidence that other similarly situated nonminority employees were treated differently for the same behavior. See Elmore, 58 F.3d at 530; Aramburu, 112 F. 3d at 1403-06 (discussing disparate treatment requirement that employee be "similarly situated").

Ms. Birge did not present any evidence that she was "held to a unique standard and thus treated less favorably than male [candidates]." Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381 n.6 (10th Cir. 1994). Ms. Birge contends that the Commissioner's reliance on the newspaper articles was unreasonable because he did not investigate the accuracy of the articles or give her a chance to explain her side of the story. She presented no evidence, however, that her treatment was different from that afforded male applicants. To the contrary, Mr. Anglada testified that unsolicited information had been received on male applicants and that, as in Ms. Birge's case, the male applicants were not given a chance to explain any negative information received.

Further, Mr. Anglada testified attempts were made to contact the chief judge of Ms. Birge's court in order to investigate the allegations in the news articles, without success. Even if the Commissioner should have done more to investigate the accuracy of the news articles about Ms. Birge, an employer's

-10-

failure to follow internal procedures "does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given . . . were pretextual." Randle, 69 F.3d at 454 & n.20.

An employer does not violate Title VII by choosing among equally qualified candidates, so long as the decision is not based on unlawful criteria. See Burdine, 450 U.S. at 259. Ms. Birge has not presented evidence that she was overwhelmingly better qualified than the other candidates. Mr. Anglada testified that, in contrast to Ms. Birge's application, nothing negative came to his attention with respect to the candidates selected for ALJ positions. Absent evidence that one candidate is "overwhelmingly better qualified," pretext cannot be shown simply by comparing plaintiff's qualifications with those of the successful applicant. See Sanchez, 992 F.2d at 247-48; Fallis v. Kerr-McGee Corp., 944 F.2d 743, 747 (10th Cir. 1991) (holding that mere disagreement with employer's evaluation of which geologists were best qualified, standing alone, could not support finding of pretext); Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) ( "As courts are not free to second-guess an employer's business judgment, this assertion [that plaintiff was equally or more qualified] is insufficient to support a finding of pretext.").

There is no evidence that the Commissioner's decision was not actually made on the basis of the news articles. Notwithstanding the presumption of

discrimination that arises after a plaintiff establishes her prima facie case, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993) (quotation and alteration omitted). A "plaintiff's 'mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" <u>Panis</u>, 60 F.3d at 1491 (quoting <u>Branson</u>, 853 F.2d at 772; alteration in original). Ms. Birge presented neither direct evidence of the Commissioner's discriminatory motive, nor indirect evidence which would call into question the Commissioner's motives. <u>See</u> <u>Elmore</u>, 58 F.3d at 530.

Accordingly, the judgment of the United States District Court for the District of New Mexico is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge
